# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3290 | **DATE** | 9/23/2003 |
| **CASE TITLE** | Thomas F. Asch, et al. vs. Teller, Levit & Silvertrust, P.C. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ **Status hearing set for 10/23/2003 at 9:30 A.M..**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [60-1] is granted in part and denied in part. Plaintiffs' cross motion for summary judgment [74-1] is granted in part and denied in part. Status is set for October 23, 2003 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | SEP 2 6 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 90 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | courtroom deputy's initials | date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

| | ) | |
|---|---|---|
| THOMAS F. ASCH, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) | Case No. 00 C 3290 |
| v. | ) ) | |
| TELLER, LEVIT & SILVERTRUST, P.C., an IL Professional Corporation, | ) ) ) | Judge Joan B. Gottschall |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas Asch and John Bollweg have filed a class action lawsuit against defendant Teller, Levit & Silvertrust, P.C. ("Teller, Levit"). Plaintiffs allege that defendant, a debt collector, failed to credit loan payments and garnishments toward plaintiffs' outstanding debts at the time that Teller, Levit received the payments, thus allowing the build-up of additional interest between the time the payments were received and the time the payments were credited toward plaintiffs' accounts. Plaintiffs allege that this practice constitutes a claim for unjust enrichment under Illinois law (Count II); violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e(2), e(10) and f(1) ("FDCPA") (Count I), Illinois Consumer Fraud Act, 815 ILCS § 505/2 ("ICFA") (Count III), and the Illinois Deceptive Trade Practices Act, 815 ILCS § 510 ("IDTPA") (Count IV); and merits a declaratory judgment pursuant to 28 U.S.C. § 2201. Defendant moved for summary judgment and plaintiffs moved for partial summary judgment on liability. As explained below, defendant's motion is denied in part and granted in part; plaintiffs' motion for partial summary judgment on liability is granted in part and denied in part.



## I. Background

Teller, Levit is a law firm which collects consumer debts, including delinquent student loans. The Illinois Student Assistance Commission ("ISAC") hired Teller, Levit to represent ISAC in the collection of delinquent student loans and agreed to pay Teller, Levit fees in the amount of 18% of the money it collects on behalf of ISAC. The consumer debts that Teller, Levit accepts payment on have been reduced to judgment. Teller, Levit collects these judgment debts by accepting payments from judgment debtors and by obtaining garnishments of judgment debtors' financial accounts.

From June 1, 1995 to May 31, 2000 (the date of the filing of the complaint), Teller, Levit admits that it did not apply every payment it received from debtors to a particular debtor's account on the actual date of receipt. Teller, Levit generally posted payments (via checks or garnishments) to debtor's accounts on the date that the payment was deposited into the ISAC trust account. Although disputed by plaintiffs, Teller, Levit contends that cash payments made by judgment debtors during this period were credited the same day they were received from the debtor. Where payment was not credited upon receipt by Teller, Levit, interest continued to accrue on the portion of the debtor payment that was to be applied to the principal portion of the debt until the payment was actually applied to the debtor's account.

The parties disagree, however, as to what Teller, Levit's practices have been from May 31, 2000 (the date of the filing of the complaint) to the present. Teller, Levit contends that, upon receiving the instant complaint, it changed its practices so that all non-garnishment payments are now credited on the day they are received by Teller, Levit. Plaintiffs dispute that this change has been strictly followed. With respect to garnished funds, Teller, Levit admits that it continues to credit payments as of the date of deposit into the ISAC trust account.

2

Plaintiffs each received student loans that were guaranteed by ISAC, defaulted on those loans, and had judgments entered against them in favor of ISAC. In an order dated August 27, 2001, the court granted plaintiffs' motion for class certification and certified two classes:

> (1) All persons bearing a monetary consumer debt who have paid monies to the defendant pursuant to defendant's debt collection efforts, and whose said payments were not credited against the persons' relevant indebtedness as of the date the payment was received by defendant, excluding only defendants, its agents or employees, and any affiliates of the defendant.

> (2) All persons bearing a monetary consumer debt whose wages, savings, or other proceeds have been garnished pursuant to defendant's debt collection efforts, and whose garnished wages, savings, or other proceeds were not duly credited to the persons' relevant indebtedness upon the entry of judgment on the garnishment against the garnishee, excluding only defendants, its agents or employees, and any affiliates of the defendant.

## II. Analysis

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### A. Count I: Fair Debt Collection Practices Act

The FDCPA seeks to "eliminate abusive debt collection practices . . . and . . . to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Plaintiffs' first count alleges violations of Sections 1692e(2), e(10) and f(1) of the FDCPA. With respect to its collection practices relating to garnishments, Teller, Levitt argues that it is not in fact governed by the FDCPA. Other than Teller, Levit's argument regarding garnishments, there is no dispute that the consumer debts at issue here are covered by the FDCPA.

Section 1692e of the FDCPA prohibits false, deceptive or misleading representations in connection with the collection of any debt. 15 U.S.C. § 1692e. Conduct which violates the FDCPA includes "the false representation of . . . the amount . . . of any debt," *id.* at § 1692e(2)(A), or the use of false representations or means to collect or attempt to collect a debt, *id.* at § 1692e(10). Plaintiffs argue that defendant's notices sent out to the debtors contained false statements in violation of Section 1692e(2) and e(10) because the amount listed as due contained improper interest charges. Specifically, plaintiffs state that the undisputed facts are that:

> Defendant had a practice of crediting payments to debtors' accounts on dates after the date of receipt (for all class members) or after the date judgment was entered on a garnishment (for the garnishment class members), thereby creating and maintaining false payment histories. Defendant furnished false payment histories to the class members' creditors (e.g., semi-monthly statements to ISAC). Defendant communicated artificially inflated account balances in writing to the class members, attributable to its improper crediting practices, and, with regard to the garnishment class, to third-parties (e.g., the court and the debtors' employers/financial institutions).

(Pls.' Mem. in Supp. of Their Cross-Motion for Summ. Judg. at 11.) In addition, Section 1692f prohibits unfair practices in the collection of debts, including the "collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

4

*Id.* at § 1692f(1). Plaintiffs argue that Teller, Levit's actions in failing to credit debtor accounts upon receipt of payment violates Section 1692f because debtors were being charged more than they actually owed.

In order to determine which party, if any, is entitled to summary judgment under the FDCPA, the court must perform a preliminary inquiry to determine whether defendant's failure to credit payments upon receipt was improper. The parties agree that Illinois law controls here. Because the attendant legal analysis differs with each class, the court considers them separately below.

### 1. Class One: Those Who Paid "Monies"

With respect to the class comprised of those who paid "monies" to defendant, the dispositive inquiry is whether, under Illinois law, a debt collector must credit the debtor with payment upon receipt of "monies," or whether the debt collector may charge interest on the debt until the money is deposited into the creditor's trust account.

### a. Checks

In Illinois, judgments statutorily accrue interest until the judgment is satisfied. 735 ILCS § 5/2-1303. The purpose of allowing post-judgment interest is so that the creditor is compensated for the loss of the use of the money it is owed. *Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.*, 470 N.E.2d 639, 642 (Ill. App. Ct. 1984). The court concludes that when a debtor pays by check a debt collector may not continue to charge interest on the debt after it receives payment, so long as the check is honored.[1] "To hold otherwise would empower payees to manipulate

---

[1] Neither party suggests that the first class includes people who paid by check, but whose checks later were rejected by the bank. In the case of a bounced check, the debtor would certainly not be entitled to a credit on his account either as of the date of receipt or the date of deposit. By definition, any debtor whose check bounced would not fall within the definition of class one. *See* 8/27/01 Order ("All person bearing a monetary consumer debt who have *paid*

5

the time of payment," *City Coal Co. of Springfield, Inc. v. Noonan*, 751 N.E.2d 894, 898-99 (Mass. 2001), and allow a judgment creditor to hold on to payments and improperly allow interest to accrue.

In *Consolidated Freightways v. Industrial Commission*, 269 N.E.2d 291 (1971), the Illinois Supreme Court was faced with the question of when to deem a payment received. In that case, an employee who injured himself on the job was paid compensation for his temporary total disability. *Id.* at 293. He was paid in the form of a draft that he received on May 3, 1965. *Id.* However, he received money for the draft from his bank on May 6, 1965. *Id.* In determining whether the employee had satisfied a one-year filing limitation for an adjustment of a worker's compensation claim, the court determined that payment was made on May 3, 1965, the day the employee *received* the draft and not the day he cashed it. *Id.* The court reasoned that a check or draft constitutes a conditional payment of the obligation, with the condition subsequent being that the bank honor it. *Id.* As the court explained, "When the check is paid on presentment[,] the condition to which the payment was subject is performed and what had been a conditional payment at the time of delivery of the check becomes an absolute payment and *such payment relates back to the time the check was delivered to the payee*." *Id.* (emphasis added). This case supports plaintiffs' argument that payment in the form of a check should be credited to the debtor's account at the time it is *received*.

In addition, *Shuster v. Brantley*, 606 N.E.2d 612 (Ill. App. Ct. 1992), is also persuasive.[2] In

---

*monies* to the defendant . . .").

[2]Teller, Levit argues that *Shuster* has questionable relevance because it dealt with the suspension of interest following judgment but before appeal, and there is no appeal in the present case. The court can only assume that Teller, Levit withdraws that objection as the main case relied on by it, *Pinkstaff v. Penn. R.R. Co.*, 202 N.E.2d 512 (Ill. 1964) also involves payment of a judgment prior to the taking of an appeal. The court can see no reason why it should not consider these cases in the current context.

6

that case, plaintiff won $76,000 from defendants in a personal injury lawsuit. *Id.* at 613. Defendants' insurance carrier tendered to plaintiff's attorney a check dated December 28, 1988 for $84,005.07 as satisfaction of the judgment entered against defendants. *Id.* Plaintiff's counsel returned the check asserting in a letter that "proper tender" of the funds could not be made until after the appeal was resolved. *Id.* Following the completion of the appeal, plaintiff sought interest from defendants from the original date of judgment. *Id.* The court agreed with defendants that the tendering of the check on December 28, 1988 stopped the accrual of interest on the judgment. *Id.* at 614.

Despite Teller, Levit's insistence otherwise, *Pinkstaff v. Pennsylvania Railroad Co.*, 202 N.E.2d 512, 515-16 (Ill. 1964), does not support its position. In that case, the court held that interest on a judgment continues to accrue even during an appeal. *Id.* The court held that the only way for the judgment debtor to suspend the running of interest was to "tender" payment and then take an appeal. *Id.* Unfortunately for Teller, Levit, *Pinkstaff* says nothing about *when* tender occurs or when such a payment should be credited to the debtor.

### b. Cash Payments[3]

Both parties agree that Teller, Levit must credit a debtor's account on the same day it receives a cash payment.

### 2. Class Two: Those Who Paid By Garnishment

Garnishment judgments are also statutorily entitled to interest under Illinois law. *Busey Bank v. Salyards*, 711 N.E.2d 10, 17 (Ill. App. Ct. 1999). As it did with respect to payments made by

---

[3]The parties agree that the analysis concerning payments by cash applies equally to payments made by certified funds.

check, defendant argues that it was proper for it to credit funds garnished from debtor bank accounts on the date that the payment was deposited into the ISAC trust account. Plaintiffs, on the other hand, argue that defendant has improperly failed to credit debtor accounts on the date on which funds have actually been received by Teller, Levit.

Before 1999, a wage deduction order was retrospective, so that an employer withheld wages as soon as it received a service of summons. 735 ILCS § 5/12-808(b) (West 1993). Therefore, by the time the garnishment judgment was entered, the wages had already been collected and the creditor could immediately collect the funds. After January 1, 1999, Illinois amended the wage deduction statute to cover both retrospective and prospective withheld wages. 735 ILCS § 5/12-808.5 (West 2003). With a prospective order, the wages are not earned until after the garnishment judgment is entered. In either event, the court concludes that a debtor should be credited with payment as of the date that the garnished wages are available to Teller, Levit. *In re Weatherspoon*, 101 B.R. 533, 541 (Bankr. N.D. Ill. 1984) ("The employer pays withheld wages to the judgment creditor . . . not pursuant to the summons . . . but pursuant to the [wage deduction] order, and it is the order that gives the creditor the unconditioned right to the funds or property."); *Nealis v. Ford Motor Co.*, 52 B.R. 329, 331 (Bankr. N.D. Ill. 1985) (concluding that in Illinois the transfer of wages did not occur until the garnished wages were actually earned). With respect to non-wage garnishments, the court likewise concludes that a debtor should be credited with payment as of the date that the garnished funds are available to Teller, Levit. *Ambrose*, 1850 WL 4250 (Ill. 1850) (for non-wage garnishment, debtor's judgment is deemed satisfied at the time of the garnishment judgment); *Busey Bank*, 711 N.E.2d at 15 (in non-wage garnishment, the garnishment turnover order transfers the debtor's interest in the property to the creditor). Teller, Levit has failed to offer the

court any authority that supports its position that it can hold on to garnishment funds for whatever period of time it chooses – all the while allowing interest to build against a debtor's account – before it deposits the funds in ISAC's trust account.[4]

Additionally, the court must address defendant's novel argument that the garnishment proceedings brought against plaintiffs in order to collect judgment debts are not covered by the FDCPA. Teller, Levit cites only one case in support of its argument that the actions it took in garnishing money from plaintiffs are not covered by the FDCPA. In that case, plaintiff sued defendant for breach of a settlement agreement previously entered into by the parties resolving a dispute over a commercial debt. *Fleet Nat'l Bank v. Baker*, 263 F. Supp. 2d 150 (D. Mass. 2003). Defendant, who originally removed the case from state court, argued that his counterclaim for a violation of the FDCPA gave the court federal court jurisdiction. *Id.* at 152. The court determined that a remand to state court was necessary both because the debt at issue was commercial in nature, and because the dispute before the court was based on an alleged breach of a settlement agreement, and not the underlying debt. *Id.* at 153-54. In contrast, the present case is not about any problems with the garnishments themselves (or any related settlement), but rather relates directly to debt payments. This case is completely distinguishable from *Baker* and the court has not uncovered any other authority supporting defendant's position. In light of this, the court will analyze the garnishment class under the FDCPA.

3. **FDCPA Analysis**

The court concludes that as a result of Teller, Levit's improper crediting of debtors' accounts,

---

[4] For example, it took Teller, Levit sixteen months to credit Asch's account with the $1,548.96 it received through a non-wage garnishment judgment.

9

Teller, Levit falsely represented the amount of a debtor's debt and used these false representations to collect additional interest from debtors in violation of Section 1692e(2) and e(10) of the FDCPA. Finally, Teller, Levit collected more money than it was owed, in violation of Section 1692f(1) of the FDCPA. *See e.g., Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495, 1504-05, 1509 (D.N.M. 1994) (collecting compound interest where law only allowed simple interest). Plaintiffs' motion for summary judgment on Count I is granted with respect to those members of class one who paid by check or cash and had their payment credited sometime after the day it was received by Teller, Levit, and those members of class two who had their accounts credited sometime after the day the garnished funds were available to Teller, Levit. Defendant's motion is granted with respect to any debtors who had their payments credited properly according to the analysis in this opinion.

### B. Count III: Illinois Consumer Fraud And Deceptive Business Practices Act

To impose liability under the ICFA, a plaintiff must show: (1) that defendant engaged in a deceptive act or practice; (2) that defendant intended the plaintiff to rely on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce. *Martin v. Heinold Commodities, Inc.*, 643 N.E.2d 734, 754 (Ill. 1994). Plaintiff need not show that defendant intended to deceive, but rather need show only that defendant intended that plaintiff rely on the information. *Griffin v. Universal Cas. Co.*, 654 N.E.2d 694, 700-01 (Ill. App. Ct. 1995).

Here, plaintiffs have shown that defendant misrepresented a material fact, namely, the proper amount owed by debtors. Further, Teller, Levit does not dispute that it intended that plaintiffs rely on the statements presented to debtors listing the outstanding amount of debt. Finally, this deception occurred in the course of conduct involved trade or commerce. *People ex. rel. Daley v. Datacom*

*Systems Corp.*, 585 N.E.2d 51, 64-65 (Ill. 1991) (debt collection activities are "trade" and "commerce" covered by the IFCA). As with Count I, plaintiffs' motion for summary judgment on Count III is granted with respect to those members of class one who paid by check or cash and had their payments credited sometime after the day they were received by Teller, Levit, and those members of class two who had their accounts credited sometime after the day the garnished funds were available to Teller, Levit. Defendant's motion is granted with respect to any debtors who had their payments credited properly according to the analysis in this opinion.

C.     **Count IV: Illinois Deceptive Trade Practices Act**

The IDTPA "has been broadly construed as a remedy for unfair trade practices between competing businesses as well as for deceptive trade practices damaging consumers." *Zinser v. Rose*, 614 N.E.2d 1259, 1264 (Ill. App. Ct. 1993). A debt collector, who is hired by a creditor, performs a "sale" of a "service" affecting "trade or commerce." *Datacom*, 531 N.E.2d at 64-65. While money damages are not available under the IDTPA, *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1337 (Ill. 1995), a plaintiff may be awarded injunctive relief, and costs and/or attorney's fees may be granted where the defendant has willfully engaged in a deceptive trade practice. 815 ILCS § 510/3. Under the IDTPA, "injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future." *Smith*, 658 N.E.2d at 1337. Unlike a case where a consumer has been injured in the past and is unlikely to be injured by defendant again, plaintiffs here have an ongoing relationship with Teller, Levit as plaintiffs will continue paying their outstanding student loan debts. In light of this, the court concludes that plaintiffs have alleged facts that show a likelihood that they will be damaged in the future if defendant's conduct continues. Plaintiffs' motion for summary judgment on Count IV is

11

granted with respect to those members of class one who paid by check or cash and had their payment credited sometime after the day it was received by Teller, Levit, and those members of class two who had their accounts credited sometime after the day the garnished funds were available to Teller, Levit. Defendant's motion is granted with respect to any debtors who had their payments credited properly according to the analysis in this opinion.

### D.     Count V: Declaratory Judgment Act

Under the Declaratory Judgment Act, a federal court is authorized to "declare rights and other legal relationships of any interested parties . . . whether or not further relief is or could be sought." 28 U.S.C. § 2201. The purpose of the Act is to "enable parties to understand their rights and to avoid accruing avoidable damages." *Household Fin. Servs., Inc. v. No. Trade Mortgage Corp.*, No. 99 C 2840, 1999 WL 782072, at *2 (N.D. Ill. Sept. 27, 1999) (citing *Nucor Corp. v. Aceros y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 577 (7th Cir. 1994)). Plaintiffs' claim, however, does not further the purpose of the Act. Plaintiffs do not seek a declaratory judgment that would clarify their rights and obligations in order to avoid accruing avoidable damages. Instead, plaintiffs seek a declaratory judgment that would clarify *defendant's* duties. It is defendant, and not plaintiffs, who is accruing damages by improperly charging interest on debtor accounts. *Int'l Paper Co. v. Androscoggin Energy LLC*, No. 00 C 6215, 2003 WL 21468623, at *3 (N.D. Ill. June 20, 2003) (party cannot bring action under Declaratory Judgment Act to define duties and limit damages of adversary). For these reasons, plaintiffs' motion for summary judgment on Count V is denied. Defendant's motion for summary judgment on Count V is granted.

### E.     Count II: Unjust Enrichment

To state a cause of action on a theory of unjust enrichment, a plaintiff must allege that

12

defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates fundamental principles of justice, equity and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679-80 (1989). A plaintiff alleging unjust enrichment may be seeking to recover a benefit which he gave directly to defendant, or one which was transferred to defendant by a third party. *Id.* at 679. Here, plaintiffs argue the latter because they seek to disgorge those Teller, Levit's fees (paid by ISAC, a third party) which were based on the improper accrual of interest.

To establish that the retention of a benefit conferred upon defendant by a third-party constitutes unjust enrichment, a plaintiff must show that (1) the benefit should have been given to plaintiff, but the third party mistakenly gave it to defendant instead; (2) defendant procured the benefit from the third party through some type of wrongful conduct; or (3) plaintiff for some other reason had a better claim to the benefit than defendant. *Id.* Plaintiffs argue that the first and second possibilities apply here. Defendant responds to plaintiffs' arguments only by asserting that because the source of its fees are "federal funds," there can be no unjust enrichment claim.

First, the court rejects plaintiffs' assertion that the fees earned by defendant "should have been given to the plaintiff[s], but [ISAC] mistakenly gave [them] to the defendant instead." However, plaintiffs also argue that Teller, Levit procured the fees from ISAC through wrongful conduct. "[T]he essence of the cause of action is that one party is enriched and it would be unjust for that party to retain the enrichment." *Fireman's Annuity & Ben. Fund v. Mun. Employees' Officers' & Officials' Annuity & Ben. Fund,* 579 N.E.2d 1003, 1007 (Ill. App. Ct. 1991). While the court agrees that Teller, Levit engaged in wrongful conduct that resulted in inflated fees, the proper party to recover any inflated fees is ISAC, not plaintiffs. The parties have pointed to no case, and

13

the court has uncovered no case, in which a court has applied *HPI*'s wrongful conduct exception where a plaintiff is attempting to recover money to which it is not entitled. In establishing the wrongful conduct exception, the *HPI* court cited to a Connecticut Supreme Court case, *Harper v. Adametz*, 113 A.2d 136, 139 (Conn. 1955). In *Harper*, a plaintiff, who sued a defendant who received a benefit from a third party, proved that it was entitled to that benefit. *Id.* This case is clearly distinguishable from both *HPI* and *Harper* in that plaintiffs have not shown that they are rightfully entitled to any fees paid to Teller, Levit by ISAC. The court cannot conclude that the Illinois Supreme Court intended to create a claim for unjust enrichment where a plaintiff claims damages that rightfully belong to a third party. Defendant's motion for summary judgment is granted as to Count II; plaintiffs' motion is denied as to Count II.

### III. Conclusion

The court need not resolve the parties' dispute concerning two issues: (1) whether or not Teller, Levit changed its practice after the filing of the instant lawsuit so that checks would be credited upon receipt; (2) whether or not Teller, Levit always credited a debtor's cash payment on the day it received it. Instead, as part of their damages case, plaintiffs may provide proof of any individual who in fact had his payment credited improperly. For the reasons stated above, plaintiffs' motion is granted in part and denied in part. Likewise, defendant's motion is granted in part and denied in part.

ENTER:

*[signature]*

JOAN B. GOTTSCHALL
United States District Judge

DATED: September 23, 2003

14