
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3290 | **DATE** | 11/22/2004 |
| **CASE TITLE** | Asch vs. Teller, Levit | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion for Further Summary Judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Enter Order. Plaintiff's motion for further summary judgment [96-1] is granted in part and denied in part. Status set for Wednesday December 15, 2004 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 24 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | | date mailed notice | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

| | |
|---|---|
| THOMAS F. ASCH, and JOHN A. BOLLWEG ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> TELLER, LEVIT & SILVERTRUST, P.C., ) <br> ) <br> Defendant. ) | Case No. 00 C 3290 <br><br> Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Thomas Asch and John Bollweg, on behalf of two classes of similarly situated individuals,[1] have sued the law firm of Teller, Levit & Silvertrust, P.C. ("Teller, Levit"), a debt collector, alleging that Teller, Levit failed to credit debtors' loan payments and garnishments toward plaintiffs' outstanding debts as of the date that Teller, Levit received the payments. Plaintiffs allege that Teller, Levit's delay in crediting their accounts artificially inflated the balance of their debts by allowing additional interest to accrue between the time the payments were received and the time the payments were eventually credited toward plaintiffs' accounts. Plaintiffs claim, *inter alia*, that Teller, Levit's delay in crediting payments violated the Fair Debt Collection Practices Act

---

[1] The court has certified the following classes:

(1) All persons bearing a monetary consumer debt who have paid monies to the defendant pursuant to defendant's debt collection efforts, and whose said payments were not credited against the persons' relevant indebtedness as of the date the payment was received by defendant, excluding only defendants, its agents or employees, and any affiliates of the defendant.

(2) All persons bearing a monetary consumer debt whose wages, savings, or other proceeds have been garnished pursuant to defendant's debt collection efforts, and whose garnished wages, savings, or other proceeds were not duly credited to the persons' relevant indebtedness upon the entry of judgment on the garnishment against the garnishee, excluding only defendants, its agents or employees, and any affiliates of the defendant.

("FDCPA"), 15 U.S.C. §§ 1692e(2), e(10) and f(1) (Count I), Illinois Consumer Fraud Act ("ICFA"), 815 ILCS § 505/2 (Count III), and the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 ILCS § 510 (Count IV), and have requested monetary damages and injunctive relief. On September 23, 2003, the court entered summary judgment on the issue of liability in favor of plaintiffs on those three counts. *Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00-C-3290, 2003 WL 22232801, *1 (N.D. Ill. Sept. 26, 2003). However, the court did not address the question whether Teller, Levit's improper collection practices have persisted.

Plaintiffs have now filed a motion for further summary judgment, alleging that Teller, Levit <u>has</u> continued its unlawful collection practices and requesting that the court (1) enjoin Teller, Levit from collecting on accounts that have been improperly credited, and (2) order Teller, Levit to correct class members' debt balances to account for the court's ruling that payments should have been credited on the date payment was received. For the reasons stated below, plaintiffs' motion for further summary judgment is granted in part and denied in part.

## BACKGROUND

Among other practice areas, the Teller, Levit firm collects consumer debts on behalf of its creditor-clients. One such client, the Illinois Student Assistance Commission ("ISAC"), hired Teller, Levit to represent ISAC in the collection of delinquent student loans. Teller, Levit collected on delinquent accounts in two ways: (1) by accepting payments directly from judgment debtors in the form of cash or check, or (2) by obtaining garnishments of judgment debtors' financial accounts.

Teller, Levit concedes that from June 1, 1995 to May 31, 2000 (the date of the filing of plaintiffs' complaint), it often failed to credit payments to debtors' accounts on the actual date that Teller, Levit received that debtor's check. Rather, Teller, Levit generally posted payments to a debtor's account on the date that the check was deposited into the ISAC's trust account. That

practice resulted in a delay of days (or sometimes weeks) between the receipt of the debtor's payment and the crediting of the debtor's account. Teller, Levit concedes similar delays in crediting payments received by garnishment of a debtor's assets.[2] The firm's delay in crediting a debtor's account artificially inflated the debtor's account balance: interest continued to accrue on the entire balance of the debt even though the debtor had already paid a portion of that balance.

On September 23, 2003, the court ruled that Teller, Levit's failure to credit payments as of the date of receipt violated the FDCPA, ICFA, and IDTPA in that Teller, Levit (1) falsely represented the amount of the debtors' payment obligations (by reporting a balance that was inflated by undue interest) and (2) used those false representations to collect additional amounts which the debtors should not have had to pay.

Teller, Levit claims that it has fixed the problem. Along with its response, Teller, Levit has submitted the affidavit of its Office Manager, Chris Ostrander, which states that, once the instant suit was filed, Teller, Levit updated its procedures to ensure that payments are credited as of the day the firm receives payment. Ostrander states that (1) Teller, Levit stamps all checks submitted by debtors with the date of receipt, (2) all checks are to be credited to the debtor's account as of the date the check was received, and (3) any payments that are not processed on the date of receipt are back-dated in Teller, Levit's computer system so that the payment is credited as of the date of receipt despite the processing delay.

Plaintiffs maintain that Teller, Levit's new back-dating procedure is insufficient. They argue that an injunction is required because, to this day, Teller, Levit routinely delays credits to debtors' accounts and has done nothing to correct debtors' inflated account balances.

---

[2] Teller, Levit admits that its general practice was to credit payments obtained by garnishment on the date that the garnished funds were deposited into ISAC's trust account, not when the garnishment order was entered.

**ANALYSIS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, the court must view the record and any inferences to be drawn from it in the light most favorable to the party opposing summary judgment. *See Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir. 1991). The party opposing summary judgment may not rest upon the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiffs claim that – regardless of any new procedures Teller, Levit has put in place – the firm still routinely fails to credit debtor accounts as of the date that payment is received. Plaintiffs seek injunctive relief under the IDTPA and ICFA to compel Teller, Levit to discontinue that unlawful collection practice.

The IDTPA provides that: "a person likely to be damaged by a deceptive trade practice of another may be granted injunctive relief upon terms that the court considers reasonable. . . ." 815 ILCS 510/3. Therefore, under the IDTPA, "injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future." *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1337 (Ill. 1995).

The court has already resolved most of the issues central to plaintiffs' claim under the IDTPA for injunctive relief. The court held that Teller, Levit's improper crediting of accounts violated the IDTPA. *Asch,* 2003 WL 22232801 at \*6. Moreover, in its summary judgment ruling, the court concluded that, because of the ongoing relationship between plaintiffs and Teller, Levit, "plaintiffs have alleged facts that show a likelihood that they will be damaged in the future if defendant's conduct continues." *Id.* The only question remaining is whether Teller, Levit has remedied its unlawful collection practices while this suit has been pending.

Teller, Levit argues that an injunction is unwarranted because it has altered its procedures to ensure that payments are credited to debtors' accounts as of the date that payment is received. In support, Teller, Levit submits only the conclusory affidavit of its office manager, Chris Ostrander, which states, without further detail or evidentiary basis, that Teller, Levit's collection procedures now "require[] that all debtor payments made by check are to be credited to the debtor's account as of the date of receipt" and that all payments not processed on the date of receipt "are back-dated in the [Teller, Levit] computer to reflect posting on the actual date of receipt." However, Ostrander's assurance of compliance is fatally deficient in several respects.

First, the affiant's superficial description of Teller, Levit's new back-dating procedure is not supported by the factual record. Plaintiffs have established through uncontradicted evidence that Teller, Levit does not, in practice, back-date payments to reflect the date of receipt but rather back-dates all payments by only one business day regardless of when the payment was actually processed. Although that procedure means that a single day's delay does not result in undue assessment of interest, it does nothing to remedy processing delays of more than one business day. Such a half-measure does not address the deficiencies identified by the court in its summary judgment order.

Second, notwithstanding Ostrander's assurance that Teller, Levit's new procedures "require" compliance with applicable law, plaintiffs have pointed to compelling – and uncontested – evidence that the new procedures fail to <u>produce</u> compliance with the IDTPA. For example, plaintiffs cite a sample of 50 debtor payments made from June 28, 2001 through August 28, 2001 in which 50% of the payments were improperly credited by Teller, Levit. (Pl. L.R. 56.1 SOF ¶ 62-63.) Plaintiffs also cite dozens of other recent examples where Teller, Levit did not credit accounts as of the date it received payment. Teller, Levit concedes that plaintiffs' examples are accurate and has not referred the court to any evidence contradicting plaintiffs' argument that those examples of unlawful conduct are representative of Teller, Levit's overall performance.

Third, even if Teller, Levit had presented evidence that its procedures remedied the systematic errors in crediting debtor accounts, it has not done anything to ensure that the account balances which it is trying to collect are accurate. It is effectively undisputed that Teller, Levit's past failures to credit debtor accounts in a timely manner resulted in interest being improperly added to certain class members' account balances. That error, if uncorrected, could cause Teller, Levit to continually overstate the amount of outstanding debt <u>even if payments are processed properly from this point on</u>. Teller, Levit has not cited any evidence that it has sought to correct its prior misstatements.

In short, because Teller, Levit has not remedied its collection procedures and because it has not taken steps to correct its misstatements of account balances, it is highly likely that plaintiffs will be further damaged by Teller, Levit's violations of the IDTPA. The court finds that entry of an injunction is appropriate and reasonable; plaintiffs have already succeeded on the merits of their IDTPA claim and have demonstrated that, absent an injunction, Teller, Levit will continue to inflict damages with each bill it sends out and the parties will be locked in never-ending litigation.

The court therefore enjoins Teller, Levit from collecting on accounts that have been affected by Teller, Levit's failure to credit a payment as of the date funds were made available to Teller Levit. Teller, Levit has two options to comply with this injunction. It may choose to either (1) suspend collections activity on the affected accounts (while awaiting resolution of plaintiffs' damages case) or (2) bring its collection procedures in compliance with this court's orders by (a) adjusting the balance on the affected accounts to reflect the correct payment dates for past payments (and correcting the interest assessed), and (b) instituting procedures designed to ensure that future payments are credited as of the date that the payments are received. In short, to avoid further damage to plaintiffs, Teller, Levit must either preserve the *status quo* or fix the problem before continuing collections.[3]

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for further summary judgment is granted in part and denied in part.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED: November 22, 2004

---

[3] If Teller, Levit chooses to collect on affected accounts, it must correct the account balance before resuming collection activity. However, the court will not order Teller, Levit to perform an accounting if it suspends collection activity on that account (or if the account is already paid off). Assuming that all discovery obligations are met, there is nothing to suggest that Teller, Levit is in any better position than plaintiffs to determine damages for a particular class member's account.